# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY KEFFER, | ) | |
| | ) | Civil Action No. 2:17-cv-00332-LPL |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| RYAN REESE, et al., | ) | |
| | ) | ECF No. 13 |
| Defendants. | ) | |

## MEMORANDUM OPINION

Currently before the Court in this civil rights action is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) filed by Defendant City of Connellsville. (ECF No. 13.) For the reasons set forth below, the Court will grant Defendant's Motion to Dismiss Plaintiff's claims for failure to train and failure to supervise without prejudice to Plaintiff filing an amended complaint. The Court will deny Defendant's Motion to Dismiss relating to the statute of limitations defense without prejudice to the renewal of the statute of limitations defense in a motion for summary judgment.

## I.  STATEMENT OF FACTS

Plaintiff alleges the following facts in his Complaint, which the Court accepts as true for purposes of the motion to dismiss.

Plaintiff asserts that at all relevant times, Defendant Ryan Reese was a police officer employed by the City of Connellsville Police Department as well as a detective/supervisor employed by the County of Fayette with the Fayette County Drug Task Force. (Compl. at ¶¶ 4, 14, ECF No. 5.)

On September 30, 2009, Plaintiff was arrested by Defendant Ryan Reese based on fabricated and falsified evidence provided by a confidential informant with regard to a controlled purchase of Oxycontin. (*Id.* at ¶ 14.) Plaintiff was charged with Possession with the Intent to Deliver and remanded to Fayette County Prison. (*Id.*) The next day, Plaintiff posted bond and was released pending the preliminary hearing. (*Id.*)

Plaintiff alleges that Defendant Reese fabricated and falsified evidence giving rise to his arrest. (*Id.*) Plaintiff asserts that Defendant Reese also knowingly utilized a confidential informant who had no personal knowledge of any prior criminal activity by Plaintiff. (*Id.* at ¶ 56.) Additionally, Plaintiff asserts that Defendant Reese was aware that the confidential informant was offering his services in hopes of leniency for a criminally charged family member. (*Id.* at ¶¶ 14, 56.)

On September 9, 2010, Plaintiff was convicted of all charges. (*Id.* at ¶ 19.) On September 23, 2010, Plaintiff was sentenced to 27 to 54 months of incarceration. (*Id.* at ¶ 20.)

On October 15, 2010, the Fayette County public defender filed an appeal on behalf of Plaintiff, challenging Plaintiff's conviction on the basis of insufficiency of evidence. (*Id.* at 21.) The trial court filed an opinion in conjunction with the appeal, and on May 24, 2011, the Superior Court of Pennsylvania affirmed the trial court's ruling. (*Id.* at ¶¶ 22-23.)

On June 22, 2012, Plaintiff, pro se, filed a Post Conviction Relief Act ("PCRA") Petition and was later granted leave to file an amended PCRA Petition, which was filed on December 26, 2012. (*Id.* at ¶¶ 24, 28-30.) On February 5, 2013, the Superior Court of Pennsylvania sua sponte appointed counsel for Plaintiff, and scheduled an evidentiary hearing for Plaintiff's PCRA Petition. (*Id.* at ¶ 31.) On October 3, 2013, the court granted Plaintiff's PCRA Petition, vacated Plaintiff's conviction, and awarded Plaintiff a new trial. (*Id.* at ¶ 32.)

On January 9, 2014, counsel for Plaintiff filed Omnibus Pretrial Motions Nunc Pro Tunc raising a Petition for Habeas Corpus, a Motion to Suppress Evidence, a Motion to Disclose and Produce Confidential Informant, and a Motion to Quash Information. (*Id.* at ¶ 33.) The trial court denied Plaintiff's Omnibus Pretrial Motions Nunc Pro Tunc as well as Plaintiff's Petition for Reconsideration. (*Id.* at ¶¶ 34-36.) Plaintiff's counsel filed a Petition to Certify Appeal of the denial of the Omnibus Pretrial Motions, which was denied. (*Id.* at ¶¶ 37-38.)

Plaintiff's new trial commenced on May 6, 2014, ending in a mistrial due to a hung jury. (*Id.* at ¶ 39.) Plaintiff contends that during the new trial he discovered that the Fayette County District Attorney had destroyed contested evidence that was exculpatory in nature. (*Id.* at ¶¶ 39, 80-81.) Plaintiff further alleges that the destruction of this evidence resulted in a *Brady* violation.[1] (*Id.* at ¶ 39.) In response, the Commonwealth filed an Amended Information on May 13, 2014, and waived the corresponding arraignment. (*Id.* at ¶ 42.)

Thereafter, Plaintiff's counsel filed a Motion to Quash the Criminal Complaint alleging that the Commonwealth was unable to present a prima facie case against Plaintiff. (*Id.* at ¶ 43.) On August 11, 2014, a hearing was held on the motion and the court granted Plaintiff's Motion to Quash the Criminal Complaint. (*Id.* at ¶ 44.)

The Commonwealth subsequently filed a Notice of Appeal to the Superior Court of Pennsylvania. (*Id.* at ¶ 45). On January 13, 2015, the Superior Court found in favor of the Commonwealth and reinstated the charges against Plaintiff. (*Id.* at ¶¶ 46, 48.)

---

[1] A *Brady* violation refers to the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Court held that prosecution's failure to disclose exculpatory evidence may, in light of the circumstances of the case, undermine the truth-determining process entitling a defendant to post-conviction relief.

In response, on February 11, 2015, Plaintiff filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania. (*Id.* at ¶ 49.) The Commonwealth filed a Notice of Opposition but did not include a brief in support of its position. (*Id.*)

While Plaintiff's petition to the Supreme Court of Pennsylvania was pending, the Commonwealth filed a Motion for Leave to Enter a Nolle Prosequi ("nol pros") in the Court of Common Pleas for Fayette County citing an inability to sustain its burden of proof against Plaintiff. (*Id.* at ¶ 50.) Subsequently, on March 5, 2015, the Commonwealth's motion was granted. (*Id.*)

After the entry of nol pros, on March 16, 2015, the Commonwealth filed a Motion to Dismiss Plaintiff's Petition for Allowance of Appeal to the Supreme Court of Pennsylvania on the basis of mootness.[2] (*Id.* at ¶ 51, s*ee also* S. Ct. of PA, Allocatur Docket Sheet, Docket No. 59 WAL 2015, *Commonwealth of PA v. Keffer*, *available at* https://ujsportal.pacourts.us/DocketSheets/Appellate.aspx (last visited Nov. 9, 2017)) ("Pa. Dkt."). However, following a response from Plaintiff, the Supreme Court of Pennsylvania denied the Commonwealth's motion on April 10, 2015. (Pa. Dkt.) The court ultimately denied Plaintiff's Petition for Allowance of Appeal on May 20, 2015. (*Id.*)

Thereafter, on March 15, 2017, Plaintiff initiated the present lawsuit by filing a motion for leave to proceed in forma pauperis, which was granted on April 10, 2017. Plaintiff alleges, among other things, that the acts of Defendant Reese were undertaken with the purpose and intent of depriving Plaintiff of his rights under the United States Constitution and of the right not to be deprived of life, liberty, or property without due process of law in violation of the Fourth and

---

[2] The Complaint alleges that Commonwealth's motion was filed on or about March 18, 2015; however, the docket in WAL 2015 of the Supreme Court of Pennsylvania clarifies that the motion was actually filed on March 16, 2015. The Court may consider documents that are public records in ruling on a motion to dismiss without converting it to a motion for summary judgment. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F. 2d 1192 (3d Cir. 1993).

4

Fourteenth Amendments. It further appears that Plaintiff contends that Defendant City of Connellsville was deliberately indifferent to his rights and claims, in that the City of Connellsville, knew or should have known that Defendant Reese was not properly supervised and trained, and that these failures were due to a custom or policy of indifference to the necessity for adequate supervision and training. In instituting the present suit, it appears that Plaintiff seeks to hold Defendant City of Connellsville liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

In response to Plaintiff's Complaint, Defendant City of Connellsville filed a Motion to Dismiss the Complaint on September 25, 2017, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 13.) Thereafter, Plaintiff filed a brief in opposition to the Motion to Dismiss. (ECF No. 26.) This motion has been fully briefed and thus is ripe for disposition.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the Courts apply the following standard, as recently reiterated by the Court of Appeals:

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." . . . "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)] (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)], it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (parallel citations omitted).

Building upon the landmark Supreme Court decisions in *Twombly* and *Iqbal*, the Court of Appeals in *Connelly* reiterated the three-step process district courts must undertake to determine the sufficiency of a complaint:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are *well-pleaded factual allegations, [the] court should assume their veracity* and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly,* 809 F.3d at 787 (parallel citations omitted). At the motion to dismiss stage, "for purposes of pleading sufficiency, a complaint need not establish a prima facie case in order to survive a motion to dismiss[,]" but need allege "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Connelly,* 809 F.3d at 788-89 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)) (footnote and parallel citations omitted).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, pleadings and, in particular, pro se complaints, are to be liberally construed. *Dluhos v. Strasberg*, 321 F.3d 365, 369

(3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (holding that, when a plaintiff files a complaint pro se, the pleadings must be liberally construed and the Court must "apply the applicable law, irrespective of whether [the] pro se litigant has mentioned it by name")). *See also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 322 (3d Cir. 2001) (dissenting opinion). Indeed, a pro se complaint "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins*, 293 F.3d at 688 (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." (citing *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993))). However, there are limits to the court's procedural flexibility—"pro se litigants still must allege sufficient facts in their complaints to support a claim" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted).

### III. ANALYSIS

Defendant City of Connellsville argues that Plaintiff has failed to allege a plausible claim for failure to train and failure to supervise pursuant to § 1983.[3] Plaintiff responds that Defendant

---

[3] Defendant City of Connellsville also argues that Plaintiff was arrested for an alleged drug offense while Defendant Reese worked for the Fayette County Drug Task Force, and therefore had no involvement in the alleged misconduct. On a motion to dismiss, however, a court must take all of a plaintiff's allegations as true. Here, Plaintiff alleges that at all relevant times, Defendant Reese "was a police officer employed by the City of Connellsville Police Department

7

City of Connellsville is liable for injuries caused by the acts of Defendant Reese resulting in a malicious prosecution. In this regard, Plaintiff seeks recovery against Defendant City of Connellsville under 42 U.S.C. § 1983.

In order to "state a claim of liability under §1983, [a plaintiff] must allege that [he] was deprived of a federal constitutional or statutory right by a state actor." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (citation omitted). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . , subjects, or causes to be subjected, any citizen of the United States of any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Therefore, to state a claim for relief under § 1983, a plaintiff must demonstrate both that the defendants were acting under color of state law and that a constitutional violation was directly caused by their conduct. *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

"[C]ourts within the Third Circuit treat municipalities and their police departments as a single entity for § 1983 claims." *Sims v. Tropicana Entm't, Inc.*, No. 13-1981 (RBK/JS), 2016 WL 4801431, at *3 (D.N.J. Sept. 9, 2016) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997); *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 671 n.7 (3d Cir. 1988), *overruled in part on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination*

---

as well as a Detective/Supervisor employed by the County of Fayette with The Fayette County Drug Task Force." (ECF No. 5 ¶ 4.)

*Unit*, 507 U.S. 163, 168 (1993)). Additionally, in *Monell*, the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. *Monell*, 436 U.S. at 690 (footnote omitted). Accordingly, the City of Connellsville satisfies the first requirement to state a claim for relief under § 1983 – whether it is state actor. Therefore, the Court need only examine whether plausibly, the Complaint alleges sufficient facts to suggest that the City of Connellsville deprived Plaintiff of a constitutional right.

### A. Municipal Liability Under *Monell*

The Supreme Court recently reiterated the requirements for municipal liability in *Connick v. Thompson*:

> A municipality or other local government may be liable under [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See* [*Monell*, 436 U.S. at 692]. But, under § 1983, local governments are responsible only for "their *own* illegal acts." *Pembaur v. Cincinnati,* 475 U.S. 469, 479 (1986) (citing *Monell,* 436 U.S., at 665–683). They are not vicariously liable under § 1983 for their employees' actions. *See id.,* at 691; *Canton*, 489 U.S. at 392; *Board of Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (collecting cases).
>
> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell,* 436 U.S. at 691; see *id.* at 694. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *See ibid.; Pembaur, supra,* at 480-481; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–168, (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur, supra,* at 479–480.

*Connick v. Thompson*, 563 U.S. 51, 60–61 (2011) (parallel citations omitted).

Thus, to establish municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom, or practice of the municipal defendant that results in the constitutional violation. *Monell,* 436 U.S. at 690–91. A municipal policy is deemed to have been made "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action'

issues an official proclamation, policy or edict." *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir.1990), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072 (1991) (quoting *Pembaur,* 475 U.S. at 481). On the other hand, a custom or practice can be found with no official declaration, and can be demonstrated in one of two ways:

> First, custom "can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990); *accord* [*Beck v. City of Pittsburgh,* 89 F.3d at 971 (3d Cir. 1996)]. Secondly, "[c]ustom . . . may also be established by evidence of knowledge and acquiescence" by the final policymakers in the area. *Beck,* 89 F.3d 966, 971 (citing *Fletcher v. O'Donnell,* 867 F.2d 791, 793 (3d Cir. 1989)). However, a plaintiff need not identify knowledge and acquiescence of a practice so "permanent and well settled" as to have "the force of law," *Monell,* 436 U.S. at 691, since such customs are "ascribable to municipal decisionmakers." *Bielevicz,* 915 F.2d at 850 (internal quotations omitted) (quoting *Anela v. City of Wildwood,* 790 F.2d 1063, 1067 (3d Cir. 1986)); *see also id.* at 853 ("Such well-established custom exists only with the approval or, at the very least, with the sufferance of policymakers"). A plaintiff cannot prove a custom simply by citing one instance of the custom asserted. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995); *Fletcher,* 867 F.2d at 793. However, a showing that a well-established practice exists, and that the municipality has done nothing to end or change the practice, supports a finding of a custom attributable to the municipality. *See Bielevicz,* 915 F.2d at 852–53 (finding no basis for a directed verdict in favor of a municipality upon such a showing at trial).

*Izquierdo v. Sills*, 68 F. Supp. 2d 392, 406 (D. Del. 1999) (parallel citations omitted). *See also Berg v. Cnty. of Allegheny,* 219 F.3d 261, 276 (3d Cir. 2000) (To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk.).

Finally, "[i]n addition to identifying a policy or custom, a plaintiff bears the burden of proving that the municipal practice in question was the proximate cause of the violation of his constitutional rights." *Hodinka v. Delaware Cnty.*, 759 F. Supp. 2d 603, 615 (E.D. Pa. 2011) (citing *Bielevicz*, 915 F.2d at 850). To do so, the plaintiff must show either an "affirmative link" or

"plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz,* 915 F.2d at 850–51. So long as this link is not too tenuous, whether the municipality was the proximate cause of the constitutional violation and thus the injury to the plaintiff, is a matter left to the jury. *Id.* at 851 (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985)). *See also Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S 397, 404 (1997) ("The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.") (internal quotation and citation omitted).

Here, Plaintiff has failed to allege sufficient facts, that, if true, would lead to the plausible conclusion that a policy of the City of Connellsville proximately caused Plaintiff's injuries. Plaintiff asserts that the City of Connellsville failed to train and supervise its police officers resulting in a constitutional violation. (Compl. at ¶ 63.) Although Plaintiff asserts that the City of Connellsville is responsible for the policies of the police department (*Id.* at ¶ 6), Plaintiff fails to identify any municipal policy with respect to the City of Connellsville Police Department's training or supervision. Plaintiff fails to identify any official proclamation, policy, or edict made by any person with final authority involving the training or supervision. Plaintiff further fails to identify any course of action chosen by city policymakers that plausibly lead to Plaintiff's alleged harm, or any other similar harm. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("[m]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by city policymakers") (internal quotations omitted). Thus, Plaintiff fails to satisfy the requirements for municipal liability based

upon policy.

Accordingly, the Court need only examine whether plausibly, the Complaint alleges sufficient facts to suggest that a City of Connellsville custom or practice was the moving force behind Plaintiff's constitutional violations relating to the alleged failure to train or supervise.

    **1.    FAILURE TO TRAIN**

To establish liability on a failure to train theory through custom or practice, a plaintiff must establish "that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference." *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *Canton*, 489 U.S. at 390). "In resolving the issue of a city's liability for failure to train . . . 'the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.'" *Sims*, 2016 WL 4801431, at *5 (quoting *Canton*, 489 U.S. at 390). "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *Connick,* 563 U.S. at 62) (internal quotations omitted). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." [4] *Connick,* 563 U.S. at 62. Moreover, the identified deficiency in the training program "'[must have] actually caused' the constitutional violation." *Thomas,* 749 F.3d at 222 (quoting *Canton,* 489 U.S. at 391). Further, the United States Supreme Court has held that "[o]nly where a municipality's

---

[4] Although in some cases a single constitutional violation may amount to deliberate indifference, this is not one of them. The United States Supreme Court has limited this application only to a narrow range of circumstances where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . [would be] deliberately indifferent to the need." *Canton*, 489 U.S. at 390.

failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Canton*, 489 U.S. at 389.

Here, Plaintiff has not alleged facts suggesting that the training Defendant Reese received was so deficient as to reflect the City's deliberate indifference to Plaintiff's constitutional rights. First, Plaintiff fails to identify any training that Defendant Reese underwent while employed with the City of Connellsville.[5] Plaintiff has alleged no facts regarding an official policy endorsing Defendant Reese's conduct. Nor does Plaintiff identify any deficiencies in the City of Connellsville police training other than mere speculation. Plaintiff further fails to identify any similar acts by Defendant Reese or other City of Connellsville police officers that would demonstrate that a course of training is deficient in a particular respect. *See Connick*, 563 U.S. at 62 ("[w]ithout notice that a course of training is deficient, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights").

There is simply nothing in the Complaint that would support an inference that the City of Connellsville was aware, or should have been aware, of deficiencies in Defendant Reese's training that he may have received relating to the proper conduct between police and confidential informants. The Complaint is further devoid of any allegations that could plausibly suggest the City's police officer training was inadequate, or that a systemic pattern of similar violations occurred. The facts in the Complaint do not show that there was an obvious need for more or different training. *See Canton*, 489 U.S. at 392 ("In virtually every instance where a person has had his or her constitutional right violated by a city employee, a § 1983 plaintiff will be able to

---

[5] In the Complaint, Plaintiff suggests that Defendant Reese *may or may not* have received training in the proper conduct between police and confidential informants. (Compl. at ¶ 57) (emphasis added).

point to something the city could have done to prevent the unfortunate incident.") (internal quotations omitted). Here, there is only speculation that a lack of training caused Defendant Reese to allegedly fabricate and falsify evidence while utilizing a confidential informant, which led to Plaintiff's arrest and malicious prosecution. Thus, the Court cannot infer that further guidance was so obvious as to indicate deliberate indifference on the part of the City to Plaintiff's constitutional rights.

Accordingly, the Complaint lacks factual allegations to establish a facially plausible failure to train claim against the City of Connellsville. Because the Court should be hesitant to engage "in an endless exercise of second-guessing municipal employee-training programs" (*Canton*, 489 U.S. at 392), Plaintiff's failure to train claim fails. However, as it is unclear whether leave to amend the Complaint would be futile, the Court will grant Defendant's Motion without prejudice and grant Plaintiff leave to amend his Complaint as to his failure to train claim. *See infra* Section C.

### 2. FAILURE TO SUPERVISE

In circumstances where a supervising official knowingly permits a continuing custom or policy that results in a constitutional violation, § 1983 liability may attach. *See Colburn*, 838 F.2d at 673. To establish failure to supervise liability, "supervising officials 'must have played an affirmative role in the deprivation of the plaintiffs' rights[;] . . . the officials' misconduct cannot be merely a failure to act.'" *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986) (quoting *Commw. of Pa. v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981)). Personal involvement may be shown through "'allegations of personal direction or of actual knowledge and acquiescence.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)). "At a minimum, such liability attaches 'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2)

circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'" *Wyland v. Brownfield*, No. CIV.A. 08-1601, 2011 WL 5445305, at *13 (W.D. Pa. Nov. 9, 2011) (quoting *Colburn*, 838 F.2d at 673) (citation omitted). No liability exists under § 1983 solely based on a theory of vicarious liability or respondeat superior. *Shaw by Strain v. Stackhouse,* 920 F.2d 1135, 1147 (3d Cir. 1990) (citation omitted).

Here, Plaintiff has failed to allege facts that, if true, would lead to the plausible conclusion that the City of Connellsville had contemporaneous knowledge of the alleged fabrication and falsification of evidence, or that the City had ever engaged in an act that would demonstrate acquiescence and approval to such conduct. Moreover, Plaintiff's Complaint fails to identify similar incidents by Defendant Reese or other Connellsville police officers that could have notified supervisors of such conduct.[6] The Complaint is further devoid of any facts that could lead this Court to infer that City of Connellsville supervisors gave personal direction ordering constitutional violations similar to the allegations here. Plaintiff merely speculates that there was a failure to supervise Defendant Reese without tendering factual support for this claim. Even after liberally construing the pro se Plaintiff's pleadings, the Plaintiff does not allege enough facts to state a claim to relief that is plausible on its face.[7] However, as it is unclear whether leave to amend the Complaint would be futile, the Court will grant Defendant's Motion without prejudice and grant Plaintiff leave to amend his Complaint as it relates to his failure to supervise claim. *See infra* Section C.

---

[6] *See Connick*, 563 U.S. at 62.
[7] *See Twombly*, 550 U.S. at 570 (A complaint must be dismissed even if the claim is conceivable, because a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face.")

**B.     STATUTE OF LIMITATIONS**

Defendant argues that Plaintiff's claims are barred by the statute of limitations. Plaintiff seeks recovery against Defendant under 42 U.S.C. § 1983. The limitations period for civil actions brought under 42 U.S.C. § 1983 is determined by state law. Under Pennsylvania law, the applicable statute of limitations period for civil rights actions asserted under 42 U.S.C. § 1983 is two years. *See* 42 Pa. C.S. § 5524. The date when a civil rights action accrues (begins to run), however, is a matter of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A claim accrues when the plaintiff becomes aware, or should have become aware, of both the fact and injury and its causal connection to the defendant. *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the statute of limitations period); *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir. 1988) (a federal cause of action accrues when the plaintiff is either "aware, or should be aware, of the existence of and source of injury, not when the potential claimant knows or should know that the injury constitutes a legal wrong").

Here, it appears that Plaintiff alleges, among other things, a claim for malicious prosecution. The law is clear that in order state a claim for malicious prosecution, a plaintiff must aver, among other things, that the criminal proceedings at issue terminated in his favor. *Rose v. Bartle*, 871 F.2d 331, 348-49 (3d Cir. 1989). Therefore, for purposes of the statute of limitations, a § 1983 cause of action for malicious prosecution will not accrue until such favorable termination. *Id.* (plaintiff would not know or have reason to know of injury that forms the basis for malicious prosecution until underlying criminal proceedings are favorably terminated.)

Here, Defendant argues that Plaintiff's claims are time barred by the two-year statute of limitations under Pennsylvania law. (Def.'s Br. Mot. Dismiss, ECF No. 14). Defendant notes that, according to Plaintiff's Complaint, the criminal proceedings at issue were favorably terminated on

March 5, 2015, the date of entry of nol pros. (*Id.*) Defendant claims that March 5, 2015, is the latest date on which Plaintiff's claims could have accrued. *(Id.)* Defendant asserts that because Plaintiff initiated the current proceedings on March 15, 2017, more than two years after the entry of nol pros, Plaintiff's claims are untimely.[8] (*Id.*)

In the Complaint, however, Plaintiff sets out the procedural history of the underlying criminal proceedings. (ECF No. 5 ¶¶ 14-51.) The Court's examination of these factual allegations raises the issue as to when Plaintiff knew of the entry of nol pros.

Defendant fails to address when Plaintiff knew, or had reason to know, that the underlying criminal charges were favorably terminated. Plaintiff's response does not address the issue.

Therefore, the Court looks to public records and concludes that it cannot be determined when Plaintiff knew, or had reason to know, of the nol pros entered on March 5, 2015. On February 24, 2015, the Court of Common Pleas of Fayette County reduced Plaintiff's bond, and Plaintiff subsequently posted bail on February 26, 2015. (See Court of Common Pleas of Fayette County, Criminal Docket, Docket No. CP-26-CR0001702-2009, *Commonwealth of PA v. Keffer, available at* https://ujsportal.pacourts.us/ DocketSheets/CP.aspx (last visited Nov. 9, 2017)) ("Fayette Cnty. Dkt."). On March 5, 2015, the Commonwealth sought and was granted entry for nol pros. (Compl. at ¶ 50, Fayette Cnty. Dkt.) However, according to the docket, on March 13, 2015, "mail was returned undeliverable." (Fayette Cnty. Dkt.) Accordingly, the Court can reasonably infer that Plaintiff did not receive notice of the entry of nol pros until a later time within the statute of limitations. Thus, Defendant fails to establish the required notice for accrual purposes. *See Urie v.*

---

[8] Defendant appears to invoke the so called "Third Circuit Rule" which permits the statute of limitations to be raised by motion under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975) (footnote omitted)).

*Thompson,* 337 U.S. 163, 170 (1949) (an injured party's cause of action does not accrue until he learns of his injury); *Zeleznik v. United States*, 770 F.2d 20, 22 (3d Cir. 1985) (an injured party cannot make a claim until the party has, or should have had, notice of the action to bring.)

Given that Defendant failed to address the issue of notice, and the Fayette County Court of Common Pleas docket reflects that mail was returned undeliverable after the entry of nol pros, there is a genuine dispute of fact regarding Plaintiff's notice. Therefore, in viewing the facts in light most favorable to the Plaintiff, Defendant's Motion to Dismiss on the issue of the statute of limitations must be denied without prejudice to the renewal of the statute of limitations defense in a motion for summary judgment. *See Savage v. Bonavitacola*, No. Civ. A. 03-0016, 2005 WL 568045, at *6 (E.D. Pa. March 9, 2005). *See also In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.,* 954 F. Supp. 2d 360, 383 (W.D. Pa. 2013).

Because Defendant's Motion fails with regard to Plaintiff's notice of the entry of nol pros, the Court need not address whether Plaintiff's pending appeal to the Supreme Court of Pennsylvania delayed accrual of the statute of limitations after the entry of nol pros.[9]

### C.     CURATIVE AMENDMENT

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)

---

[9] After the entry of nol pros by the trial court, the Commonwealth filed a Motion to Dismiss Plaintiff's petition for appeal to the Supreme Court of Pennsylvania citing mootness of the issue. (Compl. at ¶ 51.) However, the Supreme Court of Pennsylvania denied Commonwealth's motion to dismiss. (Pa. Dkt.) Because the Commonwealth argued that the issue was moot and the court denied the Commonwealth's motion, it is unclear whether the pending appeal delayed accrual.

(asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile).

In Plaintiff's response to Defendant's Motion to Dismiss, Plaintiff asserts several allegations against Defendant Reese and Defendant City of Connellsville, that, if true, may sufficiently raise the claims above the speculative level. Plaintiff first asserts that Defendant Reese has been convicted of official oppression and corruption of a minor relating to his interactions with confidential informants. (Pl.'s Resp. to Def.'s Mot. Dismiss, ECF No. 26 at 6.) Plaintiff further asserts that Defendant Reese has:

> [A]dmitted under oath to a search that strayed from normal police standards, admitted to losing sight of [a] confidential informant and testified to the lack of probable cause in that he "could not say what changed hands", (sic) [and] falsified information on [an] Affidavit of Probable Cause to secure [an] arrest warrant claiming evidence that differed from the evidence in [Defendant] Reese's possession.

*Id.* Plaintiff also attached several news articles in response to Defendant's Motion to Dismiss. According to the articles, it appears that Defendant Reese was charged with several crimes, some of which relate to the use of confidential informants and controlled purchases. (ECF No. 26-2 at 2-3, 7) (ECF No. 26-3 at 1-2). Accordingly, eight to ten drug cases investigated by Defendant Reese were voluntarily withdrawn by the prosecution, following the criminal inquiry into Defendant Reese's conduct. (ECF No. 26-3 at 2.) It also appears that a second member of the Fayette County Drug Task Force was charged with stealing evidence from the evidence room at his police station.[10] (ECF No. 26-2 at 7.) Based on this information, Plaintiff's claims for failure to train and failure to supervise may rise above the speculative level to establish a facially plausible claim against Defendant City of Connellsville.

---

[10] The article did not state whether the second officer was a City of Connellsville employee while working with the Fayette County Drug Task Force.

As it is unclear whether leave to amend would be futile, Defendant's Motion to Dismiss Plaintiff's claims for failure to train and failure to supervise will be granted without prejudice to Plaintiff filing an amended complaint as to these claims.

Finally, the Court directs that pursuant to Federal Rule of Civil Procedure 11, that Plaintiff sign the operative complaint, whether it be the original complaint, or an amended complaint. If Plaintiff chooses to stand on his original complaint, a signed copy must be refiled.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Defendant's Motion to Dismiss Plaintiff's claims for failure to train and failure to supervise without prejudice to Plaintiff filing an amended complaint. The Court will deny Defendant's Motion to Dismiss relating to the statute of limitations defense without prejudice to the renewal of the statute of limitations defense in a motion for summary judgment.

An appropriate Order will follow.

Dated: January 19, 2018.

s/Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Anthony K. Keffer
904 N. Jefferson St.
Connellsville, PA 15425

All Counsel of Record
Via Electronic Filing